**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2013 NOV -1  P 12: 03

**JOHN KIERNAN**
**of 11 Wildwood Terrace**
**Hudson, NH 03051,**

 **Plaintiff**

**v.**

**The Town of Hudson New Hampshire**
**The City of Nashua New Hampshire**
**Hudson Police Officer Cassandra Avery**
**Hudson Police Lieutenant Dave Bianchi**
**Hudson Police Officer Dan Dolan**
**Nashua Police Officer Steve Ranfros,**

 **Defendants**

**CIVIL RIGHTS COMPLAINT**
**42 U.S. CODE SECTION 1983**

*1:13-CV-480*

NOW COMES the Plaintiff John Kiernan and complains against the above

named Defendants as follows;

1) Jurisdiction is proper in this court according to Title 42 United States Code

   section 1983.

2) The Plaintiff resides in Hudson, Hillsborough County, New Hampshire.

3) The Defendants are the Town of Hudson New Hampshire, the City of Nashua

   New Hampshire, Hudson police officer Dan Dolan, Hudson police officer Dave

   Bianchi, Hudson police officer Cassandra Avery, and Nashua

   prosecutor/police officer Steve Ranfros.  The address of the Town of Hudson

   is 12 School Street, Hudson, NH 03051.  The address of the City of Nashua is

   229 Main Street, Nashua, NH 03061

4) In and after 2007 through 2013, the Defendants, while all acting under the

   authority or color of state law under Title 42 United States Code section

1983, caused a variety of false reports to be made to the Hudson, New Hampshire police department and to the Nashua, New Hampshire police department, the New Hampshire Courts and others regarding and against the Plaintiff, John Kiernan, and caused false and injurious court proceedings to be filed and maliciously prosecuted against the Plaintiff, including the abuse of two stalking petitions by the Hudson police department, the abuse of one stalking petition by the Nashua police department, the false arrest of the Plaintiff and the false imprisonment of the Plaintiff,

5) The Defendants actions, as aforementioned, caused significant violations of the Plaintiff's civil rights per Section 1983 of Title 42 of the U.S. Code. Section 1983 is part of the Civil Rights Act. Section 1983 is the primary means of enforcing all constitutional rights. Section 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The Supreme Court has broadly construed the provision, "under color of any statute" to include virtually any State Action including the exercise of power of one "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

6) The Defendants actions, as aforementioned, caused substantial emotional and psychological damages to the Plaintiff, as well as substantial legal

2

expenses and a substantial loss of consortium, care and comfort of the

Plaintiff with respect to his family and his community. The Plaintiff's life will

never be the same and was irreparably destroyed by the Defendants actions,

the Defendants willful misconduct and the Defendants significant violations

of the Plaintiff's civil rights per Section 1983 of Title 42 of the U.S. Code.

7) The Plaintiff offers this honorable court the following cause of action:

## **CAUSE OF ACTION:**

The Plaintiff is a retired, disabled, highly decorated Lowell, MA police officer

who has resided in the town of Hudson, NH with his wife and two children since

1999. The Plaintiff has also been a law-abiding citizen his entire life.

In 2007 Hudson, NH police officer Cassandra Avery blatantly lied in an

official Hudson police report in order to retaliate against the Plaintiff and in order to

satisfy a petty resentment that she had against him. The Plaintiff was the one who

had called for the assistance of the Hudson police in regard to the fact that his

former neighbors had been actively encouraging a bunch of teens to relentlessly

harass he and his young family by encouraging them to drive recklessly and

dangerously just in front of his home on the quiet cul-de-sac that they live on.

At the time the Plaintiff's children were three and six years old and played

often, always accompanied by the Plaintiff, out in the cul-de-sac. The Plaintiff was

merely concerned for the safety of his young children as any father would be and,

prior to having no choice but to call the police, he had respectfully requested that his

former neighbors get this reckless, extremely dangerous driving to stop. The

Plaintiff's former neighbors refused to help and instead continued to encourage the

teens to harass the Plaintiff even further by encouraging them to continue to drag race and speed just in front of his home on the cul-de-sac.

As a result of the effect that the lies contained in officer Avery's official Hudson police report had on the rest of the Hudson police, within six months of the filing of her false police report a lieutenant Dave Bianchi of the Hudson police incredibly advised these former neighbors of the Plaintiff to file a "stalking petition" against the Plaintiff.

Lieutenant Bianchi officially advised the Plaintiff's former neighbors to file this stalking petition against the Plaintiff despite the fact that he hadn't ever been provided with any evidence whatsoever that the Plaintiff had actually ever stalked anyone; because he hadn't.

Even more significantly, Lieutenant Bianchi officially advised the Plaintiff's former neighbors to file this stalking petition against him despite these additional, very significant facts as well:

1)      The Hudson police had been provided with proof at the time that these teens were in fact actively harassing the Plaintiff and his family, because they had even admitted this to Lt. Bianchi himself.

2)      The Plaintiff's former neighbors were in fact actively encouraging these teens to relentlessly harass and stalk the Plaintiff and his family, and the Hudson police had also been provided with proof in regard to this as well.

3)      The Plaintiff's former neighbors had actually been caught lying to the Hudson police on more than one occasion in regard to this relentless harassment, and in order to attempt to cover for the teens who were engaging in it.

After Lieutenant Bianchi officially advised the woman, who was encouraging a bunch of teens to relentlessly harass the Plaintiff and his family by encouraging them to drive recklessly in front of his home, *to incredibly file a stalking petition against the Plaintiff,* Lieutenant Bianchi then also lied in an official Hudson police report in order to aid this woman with getting her stalking petition issued against the innocent Plaintiff through Nashua District Court.

The result of these significant violations of the Plaintiff's rights, privileges and immunities were devastating for the Plaintiff's life.

At the time the Plaintiff was about to be involuntarily retired after having been injured in the line of duty as a Lowell police officer. The Plaintiff had been injured as a result of having been hit by a van after stepping out of his cruiser.

And so the Plaintiff was not working at the time and was about to be involuntarily retired as a result of these injuries. Among the many other injuries that the Plaintiff was dealing with as a result of this cruiser accident, he was also facing having to have a second major back surgery, a second spinal fusion, as a result of having previously broken his back.

And so the Plaintiff believed, since he was in his mid-forties at the time, that his only hope for meaningful, future employment at that point was his plan to go back to college, after the involuntarily retirement, in order to obtain a Master's degree in Education so that he could obtain a job as a teacher within the Lowell school system so that he could remain in the same retirement system that he had paid into for so many years as a Lowell police officer.

So the last thing that the Plaintiff could afford to have happen at that point in his life was to have a corrupt police department officially advise a pathological liar to file an absurd stalking petition against him that was filled with nothing but a bunch of lies under oath and blatant perjury. This literally destroyed his life.

The Plaintiff's former neighbors were forced to fill their stalking petition, which the Hudson police had "officially advised" them to file against the Plaintiff, with nothing but lies under oath and perjury because the truth is the Plaintiff hadn't ever done anything at all to stalk anyone. The Plaintiff's former neighbors even went as far as falsely alleging in their stalking petition that the Plaintiff had physically attacked the husband. The truth is the Plaintiff never laid a finger on anyone, ever. For that matter, the Plaintiff never even threatened to harm anyone either.

The Plaintiff was forced to defend himself at enormous cost in Nashua District Court against this perjurious stalking petition of his former neighbors and the Hudson police department.

In September of 2007 this stalking petition was dismissed in the Plaintiff's favor with a ruling that stated unequivocally, "THE PLAINTIFF WAS NOT STALKED."

When Judge David Kent was dismissing this absurd stalking petition he scolded the Plaintiff's former neighbors and their attorney, and for all intents and purposes he scolded the Hudson police as well, since they were the ones who had "officially advised" the Plaintiff's former neighbors to file it to begin with, by stating, "DO NOT LET ME SEE THIS NONSENSE IN ANOTHER COURTROOM."

Despite this warning from the Judge, within just a matter of days of the rightful dismissal in the Plaintiff's favor, the Plaintiff was then dragged into Nashua Superior Court with virtually the very same allegations.

The Plaintiff will prove to this court that if it weren't for even more significant violations of his rights, privileges and immunities by the Hudson police department he never would have been dragged through Nashua Superior Court with the very same allegations that had just been dismissed in his favor in Nashua District Court. This abuse of legal process and malicious prosecution of the Plaintiff went on for two more years at even more staggering cost to the Plaintiff and his family.

The Plaintiff's plans of returning to college were literally stolen from he and his family as a direct result of the fact that he was left with no choice other than to defend himself against the false allegations, of both the Hudson police and his former neighbors, in regard to their concerted abuse of this initial stalking petition, and as a result of the fact that he was then fraudulently dragged into Nashua Superior Court as well.

And so the Plaintiff's life was utterly destroyed as a result of the fact that Hudson police officers are permitted to get away with lying about innocent citizens in their official police reports. And more significantly, the Plaintiff will offer disturbing proof to this court that his rights, privileges and immunities were violated by the Hudson police department because he will prove to this court that the Hudson police abused the use of "stalking petitions" as a means by which to retaliate against the Plaintiff because the Plaintiff merely attempted to defend

himself against the false allegations that were being made against him by the Hudson police in their official reports and otherwise.

The Plaintiff will be able to offer this court disturbing proof of this because the Hudson police department incredibly did this to him not once but twice.

And so after being dragged into Nashua Superior Court with nothing but the exact same false allegations that were contained in the initial District Court stalking petition, and as a result of the eager complicity of several officers of the Hudson police, a hearing in regard to that case was held on March 19, 2008.

On that date Hudson officer Dan Dolan was called as witness to be used against the Plaintiff. As will be the case with so many other Hudson officers, the Plaintiff will offer proof to this court that officer Dolan had openly displayed prejudice towards the Plaintiff that served to enable his former neighbors to get away with the perpetuation of their perjurious District Court and Superior Court cases against him.

While attempting to defend himself that day in court, and while attempting to strenuously advocate for himself as any attorney would have done for him, the Plaintiff merely cross-examined officer Dolan and, as a result, he was able to successfully challenge officer Dolan's credibility in front of the presiding Judge.

As a result of this, officer Dolan and, incredibly, his wife, went completely berserk and they both then began to retaliate against the Plaintiff by actively harassing, intimidating, threatening and literally stalking the Plaintiff and his family from that day forward.

8

Officer Dolan's wife, Jodie Ficociello-Dolan, actually came after the Plaintiff one afternoon in the parking lot of Saint Christopher School in Nashua, where the Plaintiff and the Dolans both sent their children to at the time, in order to attempt to actually start a physical fight with the Plaintiff.

The Plaintiff was absolutely shocked and embarrassed by this spectacle, but simply ignored Ficociello's histrionics, never said a word to her in response, and merely picked up his young children from the school on that day like he always had.

Then on March 20, 2008, the very next day after the Plaintiff merely cross-examined officer Dolan in a court of law, Dolan and the Hudson police unbelievably sent a formal registered letter to the Plaintiff and his wife "promising" to arrange the arrest of the Plaintiff if he had "any contact in any way, shape or form" with the Dolans.

It appears quite obvious that the Hudson police and officer Dolan incredibly believe that they are entitled to send threatening, "unofficial restraining order" type *letters* to innocent Hudson citizens *"promising" to arrest them* for merely cross-examining a Hudson police officer while simply having the courage to defend themselves in a court of law in front of a Superior Court Judge.


Two and a half years later, On October 29, 2010, the Dolans finally followed through on this retaliatory "promise" of theirs to arrange to have the Plaintiff falsely arrested.   On that day, October 29, 2010, the Plaintiff went to Saint Christopher School in Nashua to pick up his children just like he had every single school day without incident for the previous four-plus years.  The Plaintiff had just had major

back surgery, a second spinal fusion, just a few weeks prior, and October 29, 2010 was actually the Plaintiff's first day driving his car since the surgery. The Plaintiff had just had the stitches taken out of his back just the day before.

After picking up his children, the Plaintiff then began to follow the same route home that he and his children had always followed for the previous four-plus years. However on that day, unbeknownst to the Plaintiff and his innocent children, Jodie Ficociello-Dolan was behind them in traffic whipping herself into another one of her angry frenzies.

As the Plaintiff and his children attempted to merge onto route three south, Ficociello-Dolan sped up and flew past them on the left hand side of their car while they were still on the one lane onramp and as they were about to merge left onto the very busy highway.

In another obvious fit of rage, similar to the one that she was in on the day that she came after the Plaintiff in the parking lot of Saint Christopher School in order to try and start a physical fight with him, Ficociello-Dolan almost forced the Plaintiff and his children off of the onramp heading onto route three south while she passed by them on the left hand side of their car.

As she was practically forcing the Plaintiff and his children off of the onramp to route three south, Ficociello-Dolan leaned way across the front seat of her SUV and wildly screamed and swung her fists at them and then appeared to repeatedly give them the middle finger.

Then Ficociello-Dolan rapidly accelerated away from the Plaintiff and his children and disappeared up the highway. The Plaintiff then observed Ficociello-

Dolan's car way up the highway in front of him because as she was heading up the off ramp of exit four from route three south she suddenly swerved to the left and then rapidly sped across three lanes at a high rate of speed. The Plaintiff observed these unsafe, high-speed lane changes way up ahead of him on the highway because there was no way that any other driver behind Ficociello-Dolan on the highway at that moment hadn't observe them, because they were that unsafe and reckless. However, this reckless driving of Ficociello-Dolan's is the only reason why the Plaintiff had seen the same vehicle, that had just almost forced he and his children off of the onramp just moments before, way up ahead of him on the highway. The Plaintiff did not pursue Ficociello-Dolan after she had almost forced he and his children off of the onramp.   However, after observing what the Plaintiff thought was the very same car that had just practically forced he and his children off of the onramp, and suspecting that it was Ficociello-Dolan harassing, threatening and stalking he and his innocent family yet again, the Plaintiff merely wanted to attempt to verify that it was in fact she.

The Plaintiff therefore began to attempt to catch up to Ficociello-Dolan at that point in order to do so. The Plaintiff eventually safely caught up to Ficociello-Dolan at exit one of route three south. The Plaintiff then safely pulled alongside of her vehicle, in the lane directly to her right, and then merely looked into her car for no more than a few seconds in order to safely verify that it was in fact Jodie Ficociello-Dolan behind the wheel of the vehicle that had just almost forced he and his children off of an onramp onto that highway. Then the Plaintiff safely pulled back, in the same lane to her right, in order to be able to safely view Ficociello-

Dolan's license plate so that he could have his son jot it down. Then the Plaintiff and his children safely exited the highway and simply drove home without incident.

What is important to emphasize here for this court is that not once was the Plaintiff ever in front of Ficociello-Dolan's car on the highway that day, and he will prove this undeniably. It is important to note this here because officer Dolan and his wife subsequently blatantly lied about this and even went as far as unbelievably reporting to the police that the Plaintiff was in front of Ficociello-Dolan on the highway repeatedly slamming on his brakes trying to cause her to crash, or trying to crash into her.

These particular blatant lies to the police, and eventual lies under oath and perjury, are simply shocking, especially given how absurd they are to begin with, and especially given the fact that the Plaintiff was with two witnesses at the time *who will never forget* what took place on the highway that day, given what the Dolans subsequently did afterwards by using this shocking example of Ficociello-Dolan's uncontrollable anger and road rage in order to deceive the court into unbelievably issuing a second stalking petition against an innocent man, and then using it in order to arrange to have him falsely arrested in front of his innocent children.

The Plaintiff was simply driving home from his children's school, like he did at that time every school day, with his children in the car and would never have done anything so dangerous as to repeatedly slam on his brakes *in front of another car on a highway.*

Officer Dolan and his wife were merely doing what dishonest police officers (and their wives?) do, which is to lie so obviously like this, in police reports and while under oath in court (commonly know as "testilying"), because they know that they will be unfairly deferred to by the court.

And so as stated, the Dolans then subsequently lied to the police, filed blatantly false police reports, lied under oath and committed perjury in order to abuse the use of yet another stalking petition against the Plaintiff.

The Dolans did this in order to finally follow through on officer Dolan's and the Hudson police department's "promise" to arrange the Plaintiff's arrest. Again, this "promise" to arrange the arrest of the Plaintiff was contained in the formal, registered letter/ "unofficial restraining order" thing that was sent to the Plaintiff's home by Dolan and the Hudson police, over two and a half years earlier, on the very next day after he merely cross-examined Dolan in a court of law while successfully defending himself against the first stalking petition that the Hudson police department abused the use of in order to openly retaliate against the Plaintiff.

Again the Plaintiff should point out here for this honorable court that he did in fact prove that he was innocent in regard to all of the lies under oath and perjury that were contained in the first stalking petition that was abused by the Hudson police department.

After Ficociello-Dolan almost forced the Plaintiff and his children off of an on ramp onto route three in another fit of rage, she and her husband officer Dolan then lied to the police and filed false police reports ridiculously claiming that the Plaintiff was somehow "stalking" Ficociello-Dolan, even though she herself admitted, in

subsequent police reports and in court documents etc., that she made sure that she remained *far behind* the Plaintiff's car while she was in traffic *behind him*.

And so the Plaintiff was somehow able *to stalk* Ficociello-Dolan that day, and place she and her children in fear, while he was *in his car* somewhere far *in front of* the car that Ficociello-Dolan was in.

However despite how absurd that sounded, the Dolans still incredibly went to Merrimack District Court anyway in order to deceive Judge Clifford Kinghorn into signing their absurd stalking petition against the Plaintiff.

Again, the Plaintiff had just had major back surgery and was driving for the first time in over a month on that day. Again, the Plaintiff had just picked up his children and they were all just driving home from their school like they had done every single school day for the previous four-plus years when Ficociello-Dolan practically forced them off of the onramp to route three south in another one of her fits of rage. And again, the Plaintiff and his children had no idea that Ficociello-Dolan was behind them in traffic that day until she blew by them, on their left, on the one lane onramp to route three south.

And yet on the very next day the Plaintiff was unbelievably served with *the second* of the two stalking petitions that the Hudson police abused the use of in order to continue to openly retaliate against he and his innocent family.

In this *second staking petition* officer Dolan and his wife lied and committed blatant perjury in regard to the reckless and dangerous road rage that *Ficociello-Dolan* had victimized the Plaintiff and his innocent children with, and which almost resulted in them being forced off of the onramp to the highway.

And incredibly in this *second stalking petition* the Dolans then not only used the lies under oath and perjury that were contained in the *first stalking petition* that the Hudson police had abused the use of, which the Plaintiff had already proven over three years earlier that he was innocent in regard to, they also used against the Plaintiff the mere fact that *first stalking petition* had *existed at all* to begin with.

In other words the Dolans deceived the court into believing that the Plaintiff was a "stalker" by unbelievably using against him the *mere existence* of the *first stalking petition*, even though, again, he had long ago proven, over three years earlier, that he was innocent in regard to it.

As a matter of fact, the Plaintiff had already proven undeniably that his former neighbors had in fact committed perjury in that *first stalking petition*, the one that is that they had dutifully filed after they were "officially advised" to do so by Lieutenant Dave Bianchi of the Hudson police despite the very disturbing fact that neither he, nor anyone else on the Hudson police department had ever been provided with any evidence whatsoever that the Plaintiff had ever stalked anyone.

And yet *over three years* after the rightful dismissal of that *first stalking petition* the Plaintiff had gone to merely pick up his children from school.

And it had been over two and a half years since the Plaintiff had seen either of the Dolans since officer Dolan and the Hudson police had incredibly "promised" to arrange the false arrest of him because he had merely questioned officer Dolan's credibility in a court of law while merely cross-examining him while successfully defending himself again that *first fraudulently obtained stalking petition.*

And yet because Dan Dolan is a police officer, and Ficociello-Dolan is the wife of a police officer, and because neither of them have any problem with abusing his access to the justice system in such corrupt, criminal ways, the Plaintiff was somehow the one being served with a second fraudulently obtained "*stalking petition.*"

And then just five days later, on November 3, 2010, the Dolans yet again filed additional false police reports falsely alleging that the Plaintiff had violated their perjurious stalking petition by falsely alleging this time that the Plaintiff was actually following Ficociello-Dolan home.

Of course none of this was even remotely true. However, as they "promised", the Dolans and the Hudson police department finally arranged the false arrest of the Plaintiff.

The Plaintiff was then forced to spend a night in the Valley Street Jail by the overzealous Nashua officers who were tripping all over themselves in order to get their shot at openly retaliating, on behalf of their fellow officer, against the guy who they had been told had allegedly tried to kill the Hudson cop's wife and children.

It was all nothing but outrageous lies under oath and perjury, but it had its desired effect.

Then on the morning of the Plaintiff's arraignment officer Dolan once again abused his access to the system and convinced the Nashua prosecutors to request $5000 cash bail. It was right at that moment that Judge Kinghorn in Merrimack District Court appeared to sense that something was not right and so he asked what was going on; he asked why such a high bail request had been made by the Nashua

police. The Nashua prosecutors couldn't answer the Judge, since the Plaintiff hadn't really stalked anyone, and because they hadn't been provided with any evidence whatsoever other than the bizarre lies that they had been told by the Dolans in regard to one incident of apparent road rage (on the part of Dolan's wife no less) and so they responded to the Judge and told him that he should ask the Hudson police why such a high bail request had been made.

It was at that point that one of the Hudson police officers, that officer Dolan was permitted by Judge Kinghorn to stack the courtroom with that day in a shocking display of police intimidation and force, was asked by the Judge to tell him what was "going on here."

Judge Kinghorn actually turned to officer Kevin Sullivan of the Hudson police and asked, "Sully what's going on here?"

The fact that officer Dolan was permitted to stack the courtroom with so many police officers is another in a long list of examples of how Dolan was permitted to continue to violate the Plaintiff's rights, privileges and immunities.

However the fact that Judge Kinghorn actually called out to one of them, using a nickname no less, in order to solicit some sort of "testimony" in regard to the arrest of the Plaintiff, is an even more disturbing example of how it was that the Plaintiff's civil rights were so repeatedly and egregiously violated throughout this shocking ordeal.

Since officer Kevin Sullivan had met the Plaintiff very briefly only once in his life, and more significantly, since the Plaintiff was the one who was actually the victim of the Dolans and the Hudson police department and their relentless need to

retaliate against him, officer Sullivan also could not offer the Judge any reason for why such a high bail request had been made by the Nashua police department prosecutors, nor could he offer him any proof or evidence at all in regard to the Plaintiff's alleged "stalking" of Ficociello-Dolan.

And so all that was offered to Judge Kinghorn at that moment by officer Dolan's entourage was just more of the same Hudson police department defamation, slander and gossip about the Plaintiff that had already been previously perpetuated by the Hudson police in regard to the first stalking petitions that the Plaintiff had already successfully defended himself against.

The Plaintiff was eventually released and Judge Kinghorn scheduled a hearing, in regard to both the arrest of the Plaintiff and in regard to the Dolan's underlying stalking petition, for the same day; that is November 30, 2010.

On that day it was undeniably revealed that officer Dolan and his wife, and both the Hudson and Nashua police departments, had incredibly arranged the Plaintiff's false arrest in retaliation for his having merely cross-examined officer Dolan in a court of law.  This fact is undeniable because Jodie Ficociello-Dolan actually admitted as much under oath that day.  Instead of providing Judge Lawrence of Merrimack District Court with any proof or evidence that the Plaintiff had actually done anything at all to *stalk her*, Ficociello-Dolan defiantly admitted that the real why she and her husband had arranged the Plaintiff's false arrest was because, and this is a quote,

"He (the Plaintiff) challenged Danny's credibility in front of a Judge.  It doesn't get any worse than that."

Another stirring highlight from Ficociello-Dolan's unbelievably incriminating testimony from that hearing was when she also testified that she knew that the Plaintiff had been "stalking her" on one occasion because she could feel him, and this is a quote, "staring holes into the backs of our heads."

Ficociello-Dolan was unbelievably referring to one morning while she and her husband, along with most of the rest of the families who sent their children to Saint Christopher School, including the Plaintiff and his wife, were all in the school church watching their young children's musical performance.  Ficociello-Dolan actually testified, and therefore informed Judge Lawrence, that while she was watching that particular children's musical performance she could not only feel the Plaintiff staring holes into the back of *her head*, but she could also somehow feel the Plaintiff staring holes into the back of her husband's head as well.

The Plaintiff would attach the transcript from that hearing in order to provide this court with all of Ficociello-Dolan's very incriminating testimony . . . however for some unknown reason every second of her testimony has somehow mysteriously disappeared.

In the transcript from the Dolan's stalking petition hearing it states "Recording Stops", right where Ficociello-Dolan's incriminating testimony would have appeared had it been dutifully recorded, and then it states "Recording Resumes", right where her testimony would have ended had it been dutifully recorded.

The Plaintiff has every reason to believe that the Dolans and their entourage arranged to have Ficociello-Dolan's very incriminating testimony erased from the recording of that hearing, that is, given the countless other examples that the Plaintiff will offer to this court in regard to how it was that he witnessed how officer Dolan and his wife were similarly permitted to abuse his access to the justice system.

The Dolan's stalking petition against the Plaintiff therefore was also dismissed in his favor in the exact same way that the previous stalking petition that the Hudson police had abused the use of was also dismissed in his favor.

When the presiding Judge, Judge Lawrence, announced to all of the attorneys involved with the Dolan's and the Hudson police department's second stalking petition against the Plaintiff that he was going to dismiss it, including the Nashua police department's prosecutor Steve Ranfros, the Dolan's attorney asked him why.

Judge Lawrence then responded by stating, "Were you in the courtroom for any of that *nonsense*?"

And of course that is the exact same word that Judge David Kent, in Nashua District Court on September 4, 2007, used to refer to the first stalking petition against the Plaintiff that the Hudson police department abused the use of.   Again when Judge Kent dismissed this first stalking petition against the Plaintiff he scolded the attorney for the Plaintiff's former neighbors, and again for all intents and purposes he scolded the Hudson police as well, since they were the ones to "officially advise" that that first stalking petition be filed against the Plaintiff, by stating, "Do not let me see this *nonsense* in another courtroom."

20

And so that makes *not one* but *two stalking petitions* that were abused by the Hudson police department in order to openly retaliate against the Plaintiff that were both summarily dismissed and referred to as "NONSENSE" by both presiding Judges.

Then as Judge Lawrence was dismissing the Dolan's stalking petition against the Plaintiff he turned to Nashua police prosecutor Steve Ranfros and stated, "And so are you going to be dropping the arrest charges against him (the Plaintiff) now as well? You're going to need to prove that he knew that he was near that woman's car in traffic and I'm pretty sure that you can't."

However, rather than drop the charges immediately, as he should have, since he had just witnessed the hearing in regard to the Dolan's underlying stalking petition and most certainly had to have recognized, as the Judge indicated that he most certainly had, that the Dolans had lied under oath and committed perjury, and that their stalking petition was "nonsense", Nashua prosecutor Steve Ranfros informed the Judge that he didn't know what to do and that he would have to get back to him.

Within an hour of the hearing the Plaintiff's attorney called the Plaintiff's wife and informed her that "everything" had been dismissed in the Plaintiff's favor. The very next day the Plaintiff called his attorney and asked him if it was therefore ok for the Plaintiff to go and pick up his children from school at Saint Christopher School in Nashua. The Plaintiff's attorney then reassured him that he could pick up his children from school that day, and every day thereafter, because "everything had been dismissed", and he also told him that the Dolans could not do anything else to him.

21

However on that day officer Dolan and his wife were lying in wait for the Plaintiff at Saint Christopher School in order to attempt to have him falsely arrested for a second time, just twenty-four hours after they had just lost in court in regard to their first false arrest of him.

On that day Ficociello-Dolan put herself within thirty yards of where she knew the Plaintiff was in the daily habit of parking his car when he went to pick up his children from their school, and then she incredibly lied in wait for his arrival with a camera in her hand at the ready.

After the Plaintiff arrived and picked up his children from their school that day, for the first time in over a month as a result of the Dolan's fraudulently obtained stalking petition, he and his innocent children attempted to merely drive home from school once again.

However before they could, Ficociello-Dolan jumped out of her car as the Plaintiff was attempting to squeeze past it and thereby almost hit the Plaintiff's car with her car door. The Plaintiff had to swerve in order to avoid hitting her. The Plaintiff was not aware of the fact that Ficociello-Dolan had parked her car on such a narrow street, within thirty yards of where the Plaintiff was in the habit of parking, and he was not aware that she had been parked there lying in wait, waiting for him to arrive to pick up his children from school that day.

Then Ficociello-Dolan, with her camera at the ready in her hand, began frantically snapping pictures of the Plaintiff's daughter. As the Plaintiff looked into his rear view mirror to see who it was that had just done something so dangerous, he was stunned to see Jodie Ficociello-Dolan with a camera pushed against her face,

just inches from the rear driver's side door of his car, frantically snapping pictures of his daughter's face, who was behind the Plaintiff on that side of the car in the back seat. This angry out of control woman had just jumped out of her vehicle directly in front of the Plaintiff's car and was now scaring the hell out of his daughter by maniacally taking pictures of her.

The Dolans had just been completely humiliated in court the very day before when they were exposed for having lied in their stalking petition, and in regard to their false arrest of the Plaintiff, and here it was just a little more than twenty four hours later and Ficociello-Dolan had picked up her children, drove all he way around the block from the upper lot at Saint Christopher School, she had parked her car within thirty yards of the Plaintiff and she had incredibly been lying in wait for him with a camera in her hand.

She had been parked there since before the Plaintiff and his neighbor had arrived to pick up the Plaintiff's children from their school. The Plaintiff's neighbor had generously offered to accompany him that day because he believed that the Dolans were going to try to do something else to the Plaintiff.

As the Plaintiff continued to look in the rear view mirror, he was even more shocked to witness what it was that he witnessed next. Ficociello-Dolan then began to chase after the Plaintiff's car with the camera in her hands while still attempting to take photos of he and his children as they were merely trying to drive home from school. As the Plaintiff continued to drive away from Ficociello-Dolan she stopped attempting to take photos of he and his children and then began to sprint after his car while maniacally screaming and yelling and gesturing at it.

The Plaintiff and his children and his neighbor all watched in shock as Ficociello-Dolan then stopped chasing after them and then began to jump up and down in the middle of the street while still screaming and yelling and gesturing at the Plaintiff's car.

Ficociello-Dolan then continued to scream and yell while in the middle of the street and then began to pump her arms and fists like she had just scored a goal in a soccer game.

The Plaintiff watched as Ficociello-Dolan then started swinging and shaking her fists at his car while still screaming and yelling at it. The best way that the Plaintiff can describe this is that Ficociello-Dolan was clearly screaming and yelling, and gesturing at him with her arms and fists, as if she were saying to him, "Now I've got you."

It was obvious that the Dolans had planned this. Ficociello-Dolan had placed herself within thirty yards of the Plaintiff, she had jumped out in front of his car in traffic with her camera pressed to her face, she then chased after his car and jumped up and down screaming and shaking her fists at him to let him know that she "had him this time!"

The Dolans were clearly stalking the Plaintiff and they were clearly attempting to set him up for false arrest number two.

And officer Dolan was most definitely in on this. Officer Dolan was also lurking about near the school in his car and he also chased after the Plaintiff's car as the Plaintiff was attempting to merely pick up his children from Saint Christopher School on the very next day after the Dolans had lost so humiliatingly in court.

24

The Dolans then rushed home and called the Nashua police and insisted that they arrest the Plaintiff for a second time. And they actually filed a police report in regard to this.

In this report, officer Dolan's wife incredibly stated something to the effect of, "I just found out that I lost in court yesterday. So I thought that he was going to try something today. And so I am again in fear for the safety of my children and I."

Although the Dolans had done all that they could to arrange the second false arrest of the Plaintiff, the Nashua police refused to do the bidding for officer Dolan and his wife yet again for a second time. Nashua police prosecutor Steve Ranfros told the Plaintiff's attorney that he was shocked at what the Dolans had attempted to get away with on the very next day after they had been so humiliated in court.

When the Plaintiff's attorney then asked Ranfros if he was therefore going to immediately drop the first arrest charges against the Plaintiff, Ranfros told him that he didn't know because, and this is a quote, "It's political now."


The Plaintiff was never arrested again, and a few days later the first arrest that the Dolans had arranged of the Plaintiff was deservedly nol prossed.

But not until after Nashua prosecutor Ranfros and the Nashua police department had the gall to actually attempt to extort or intimidate the Plaintiff into agreeing to sign a document stating that he would "stay away from the Dolans."

Nashua prosecutor Steve Ranfros tried to extort or intimidate the Plaintiff into signing this "document" by telling the Plaintiff's attorney that if the Plaintiff agreed to sign it, then he would not file a contempt of court motion in regard to the

Plaintiff's alleged violation of the bail conditions from the first false arrest of him, the one that is that had been made via the Dolan's abuse of their underlying stalking petition that had just been so summarily dismissed just twenty four hours earlier by Judge Kinghorn right in front of Ranfros' eyes.

The Plaintiff and his attorney were shocked.  The Plaintiff was innocent.  He had proven that he was innocent and had prevailed in court!  The Dolans had made fools of themselves in court, again right in front of Ranfros, and then they lied in wait for the Plaintiff and then chased after his car the very next day while attempting to set him up for false arrest number two.

Nashua prosecutor Steve Ranfros' attempt to extort or intimidate the Plaintiff into signing this "document", stating that he would "stay away from the Dolans", was tantamount to Ranfros attempting to extort a guilty verdict from the Plaintiff despite the fact that the Plaintiff had just proven, twenty-four hours earlier in a court of law in front of a Merrimack District Court Judge no less, that he was innocent!

It was just another in long line of shocking violations of the Plaintiff's rights, privileges and immunities at the hands of the Dolans, the Hudson police and the Nashua police.

Obviously the Plaintiff and his attorney did not permit Ranfros to get away with his shocking attempt at the extortion of a guilty verdict from him, and he didn't agree to sign anything.

Ranfros was then forced to drop the arrest charges against the Plaintiff, as they most definitely deserved to be, but he didn't do so until after he continued to abusively do the bidding for the Dolans and the Hudson and Nashua police

departments by filing the contempt of court motion anyway, even though he knew that the Plaintiff had proven that he was innocent in regard to the Dolan's underlying stalking petition, and even though he himself had admitted that he was shocked by what the Dolans had done the very next day after they had lost in court, when they lied in wait for the Plaintiff in order to set him up and then attempt to arrange the second false arrest of him.

Then sometime in the summer of 2012 the Plaintiff and his 10-year-old daughter had the misfortune of running into officer Dolan again at the track at Nashua South High School.

Officer Dolan once again engaged in the same type of threatening and stalking type harassment that he and his wife have regularly victimized the Plaintiff and his innocent family with since the Plaintiff merely cross-examined him in a court of law on March 19, 2008.

On this particular day in the summer of 2012 the Plaintiff and his ten-year-old daughter were walking around the track at Nashua South waiting for the Plaintiff's son to finish his cross-country training run in Mine Falls Park.

Officer Dolan suddenly appeared on the track to the right of the Plaintiff and his daughter as they were walking. Officer Dolan then ran by the Plaintiff and his daughter and shook his head back and forth at them with an angry, menacing look on his face.

It is the Plaintiff's opinion that Dolan was shaking his head back and forth at them because he was attempting to communicate to the Plaintiff and his young

27

daughter that they weren't permitted to walk around that track while Dolan was there.

Dolan then continued further around the track and then stopped near the exit. Dolan then made a production of angrily stomping around while continuing to stare menacingly at the Plaintiff and his young daughter as they continued to walk around the track.

As the Plaintiff and his daughter approached where Dolan was angrily pacing back and forth while menacingly staring at them, the Plaintiff finally asked him what he was staring at. Dolan angrily stared back without answering.

It is disgraceful that officer Dolan believes that because he is a police officer that he can engage in this intimidating type stalking of the Plaintiff, especially while the Plaintiff is with his young daughter.

It was bad enough that Dolan and his wife lied to the police, lied under oath and committed perjury in order to retaliate against the Plaintiff by arranging to have police officers come into the Plaintiff's home in order to falsely arrest him in front of his young children.

But it is another thing entirely that officer Dolan is so completely out of control that he would engage in such stalking, threatening, intimidating and menacing type behavior that is directed at a young girl.

The Plaintiff's daughter was reduced to tears as a result of officer Dolan's intimidating stalking of the Plaintiff and his daughter.

What officer Dolan and his wife did to the Plaintiff and his innocent family needs to be addressed by this court, and more significantly, they need to be stopped.

Shortly thereafter the Plaintiff then sent a formal request to Hudson police Chief Jason Lavoie requesting that he simply conduct an internal affairs investigation into the Plaintiff's false arrest at the hands of officer Dolan and his wife, into the rest of the criminal actions and abuses of officer Dolan's access to the justice system that both he and his wife engaged in while doing so, in regard to Dolan's threatening behavior and in regard to his ongoing violations of the Plaintiff and his family's civil rights.

Chief Lavoie responded to this simple request by informing the Plaintiff that he "didn't understand" what the Plaintiff was talking about.

The Plaintiff then sent Chief Lavoie a second formal request for an internal affairs investigation into the false arrest of him that had been arranged by officer Dolan and his wife.

And this time Chief Lavoie actually informed the Plaintiff that these allegations were "outside of his the jurisdiction."

A resident in the town of Hudson had requested that the Chief of Police merely conduct an internal affairs investigation into a false arrest that may have been arranged by one of his officers, and which incredibly appeared to have involved that officer's wife, and which also took place in the town of Hudson, and he claimed that it was "outside of his jurisdiction."

And so it was at that time that the Plaintiff next contacted the Nashua office of United States Senator Jeanne Shaheen in order to seek her assistance in regard to his false arrest at the hands of the Dolans and the Hudson and Nashua police departments.

Senator Jeanne Shaheen's office expressed shock in regard to the Plaintiff's false arrest at the hands of the Dolans and the Hudson and Nashua police departments and they generously agreed to contact the New Hampshire Attorney General's office in order to request an investigation on behalf of the Plaintiff.

The staff at Senator Shaheen's Nashua office told the Plaintiff that they would also attach a note, to their request for an investigation into the Dolan's false arrest of the Plaintiff, stating that Senator Shaheen would also be requesting that the Attorney General's office respond directly to her office as well as to the Plaintiff.

That was back in June.

No response has yet to be made by the Attorney General's office to either the Plaintiff or US Senator Shaheen's office.

This is also a significant aspect of this civil rights case against the above named defendants.

As a result of the obvious, unchallenged access to the justice system that is unfairly provided to the likes of an officer like officer Dolan of the Hudson police, as well as to the Hudson and Nashua police departments, the Plaintiff stands no chance of ever receiving a fair shot from the Attorney General's office because his name and reputation have been forever destroyed as a result of the defaming nature of the

violation of his rights, privileges and immunities secured by the Constitution and laws.

Simply by virtue of the fact that officer Dolan is a New Hampshire police officer, the New Hampshire Attorney General's office provides him with the luxury of being able to "define" the Plaintiff, that is by violating his civil rights by significantly defaming him within that office, without ever being required by the Attorney General's office to provide them with any evidence whatsoever to back up he, his wife's and the Hudson and Nashua police department's obvious lies about the Plaintiff.

After all, the Plaintiff was found innocent of stalking Dolan's wife after they were both put to their proof during a final hearing on the merits, and then Judge Lawrence ruled, "THE PLAINTIFF (Ficociello-Dolan) WAS NOT STALKED."

And yet the Plaintiff is not even provided with *the right*, which is presumably guaranteed to him by the Constitution and laws, to, at a minimum, at least get a chance to simply tell his story to anyone at all at the Attorney General's office in the state of New Hampshire.

The Plaintiff's rights, privileges and immunities are relentlessly being violated as a direct result of the fact that it is clearly apparent, based on the lack of any response whatsoever from the New Hampshire Attorney General's office, that the Plaintiff is going to be forever *presumed guilty* of the lies under oath and perjury that officer Dolan and his wife, along with the Hudson and Nashua police departments, employed the use of in their stalking petitions in order arrange the false arrest of the Plaintiff, despite the very disturbing fact that the Plaintiff has

already proven, in several courts of law, not once but three times by now, that he was innocent in regard to each and every one of these false allegations.

After speaking several times with staff at the Senator's Nashua office between June and September, in regard to this troubling lack of response on the part of the Attorney General's office, they told the Plaintiff that perhaps they could contact Governor Hassan's office on his behalf.

They explained that since the New Hampshire Attorney General was in fact Governor Hassan's appointee, that perhaps she might have better luck with being able to get some sort of response from his office.

The Plaintiff reluctantly agreed to this as well.

Staff at Senator Shaheen's office then told the Plaintiff that they would contact the Governor's office in regard to this request for an investigation into his false arrest at the hands of the Dolans and the Hudson and Nashua police departments.

The Governor's staff immediately contacted the Plaintiff. They told the Plaintiff that they read his request for an investigation into the Dolan's false arrest of him and they expressed concern.

The Governor's staff told the Plaintiff that the Attorney General's office actually has what is known as "The Office for Public Integrity." The staff at the Governor's office told the Plaintiff that it is this office within the Attorney General's office that is tasked with handling any and all complaints of corruption or professional misconduct on the part of government employees.

The staff at Governor Hassan's office told the Plaintiff that they would contact the Attorney General's office on his behalf and request that this "Office for Public Integrity" investigate the alleged corruption and willful misconduct on the part of officer Dolan and the Hudson and Nashua police departments.

To date no one from the Governor's office has received any real response at all from the Attorney General's "Office for Public Integrity." The Plaintiff was told that someone from the Governor's staff did speak with an attorney Richard Head from the Attorney General's office, but that he didn't provide them with any help whatsoever.

After waiting so long for any response at all from the Attorney General's Office for Public Integrity, the Governor's staff person finally told the Plaintiff that he should file a "federal civil rights claim."

Hence the reasons for the existence of this Federal Civil Rights claim.

The Plaintiff would expect that even this honorable court would agree that he has done everything that he possibly could have done in order to simply be provided with the opportunity to just tell this shocking story in order to seek the justice that he and his innocent family have been so abusively deprived of for so many years.

33

1) THEREFORE IN A PLEA OF THE CASE, in that the Defendants, individually, together and at times in concert with others, during the times identified in this pleading, engaged in conduct that was so extreme and outrageous that it constituted substantial violations of the Plaintiff's Civil Rights per Section 1983 of Title 42 of the U.S. Code.

2) IN A PLEA OF THE CASE, in that the Defendants, individually, together and at times in concert with others, during the times identified in this pleading, engaged in conduct intentionally designed to cause severe emotional distress and other damages to the Plaintiff; that the Defendants owed a duty to the Plaintiff to avoid such conduct; and, that the Plaintiff was greatly damaged in an amount within the jurisdictional limits of the Court and in a manner entitling them to such other relief as may be just;

3) IN A PLEA OF THE CASE, in that the Defendants, individually, together, and at times in concert with others, during the times identified in this pleading, engaged in a course of willful misconduct that was negligent and unreasonable under the circumstances and that foreseeably caused severe emotional distress and other losses to the Plaintiff; the Defendants owed a duty to the Plaintiff to avoid such willful misconduct and negligence; and, that the Plaintiff was greatly damaged in an amount within the jurisdictional limits of the Court and in a manner entitling him to such other relief as may be just;

4) IN A PLEA OF THE CASE, in that the Defendants, individually, together and at times in concert with others, during the times identified in this pleading,

34

engaged in a course of abuse of process toward and malicious prosecution of the Plaintiff, John Kiernan, in Merrimack District Court; the Defendant's legal efforts against the Plaintiff were terminated by dismissal; that the Defendants owed a duty to the Plaintiff to avoid such abuse and maliciousness; and, that the Plaintiff was greatly damaged in an amount within the jurisdictional limits of the Court and in a manner entitling him to such other relief as may be just;

5) IN A PLEA OF THE CASE, in that the Defendants, individually, together and at times in concert with others, during the times identified in this pleading, engaged in a series of defaming statements and other publications against the Plaintiff while knowing or having reason to know or otherwise negligently disregarding the fact that the defamatory statements or publications, both in writing and orally, were untrue; that the Defendants owed a duty to the Plaintiff to avoid such defamation; and, that the Plaintiff was greatly damaged in an amount within the jurisdictional limits of the Court and in a manner entitling him to such other relief as may be just; and,

6) IN A PLEA OF THE CASE, in that the Defendants, individually, together and at times in concert with others, during the times identified in this pleading, engaged in conduct so extreme and outrageous as not to be tolerated in a civilized society, thereby warranting the imposition and award of punitive damages and other sanctions, including but not limited to reasonable attorney fees and costs, to the Plaintiff so as to deter conduct of the nature in

which the Defendants engaged; and, that the Plaintiff is entitled to relief in an amount within the jurisdictional limits of the Court.

THE PLAINTIFF

October 31, 2013

By:

John Kiernan
11 Wildwood Terrace
Hudson, NH 03051
603-880-1434